IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEITH SNYDER and SUSAN MANSANAREZ, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>              Defendant.<br><br>TRACEE A. BEECROFT,<br><br>              Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING, LLC,<br><br>              Defendant. | CONSOLIDATED NO. 1:14-cv-08461<br><br>Class Action<br><br>Jury Trial Demand<br><br>Honorable Matthew F. Kennelly<br><br><br>Case No.: 1:16−cv−08677 |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

**Page No.**

I.  INTRODUCTION .................................................................................................. 1

II. AUTHORITY AND ARGUMENT ....................................................................... 2

    A.    The Settlement is the result of informed, arm's-length negotiations ................. 3

    B.    Settlement Class Members received the best notice practicable ....................... 7

    C.    The Settlement satisfies the criteria for settlement approval ............................ 9

        1.    The strength of Plaintiffs' case compared to the amount
            of the Settlement ................................................................................... 10

        2.    Continued litigation would be complex, lengthy, and expensive ........ 14

        3.    The reaction of the Settlement Class and Counsel's support
            favor approval ...................................................................................... 14

            a.    The Court should overrule the objections ................................ 15

            b.    The extraordinary claim rate and Counsel's support
                of the Settlement favor approval .............................................. 17

        4.    The extent of discovery completed and the stage of the
            proceedings ........................................................................................... 18

        5.    The Settlement is reasonable in light of the requested
            attorneys' fees ..................................................................................... 18

    D.    The incentive awards to the Class Representatives are fair
        and reasonable ................................................................................................. 21

    E.    The Settlement Class should be finally certified ............................................ 21

III. CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page No.**

*ACA Int'l v. FCC,*
No. 15-1211 (D.C. Cir.) .................................................................................... 12, 16

*Adams v. AllianceOne Receivables Mgmt., Inc.,*
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) .................. 13

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,*
No. 07 CV 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ...................................... 15

*Aranda v. Carribbean Cruise Line, Inc.,*
No. 12 C 4069, 2017 WL 818854 (N.D. Ill. Mar. 2, 2017) ........................................... 9

*Aranda v. Caribbean Cruise Line, Inc.,*
No. 12 C 4069, 2017 WL 1369741 (N.D. Ill. Apr. 10, 2017) ...................................... 19

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) .................................................................................................. 19

*Buchholz v. Valarity, LLC,*
No. 4:13CV362 TIA, 2014 WL 5849434 (E.D. Mo. Nov. 12, 2014) .......................... 11

*Cook v. Niedert,*
142 F.3d 1004 (7th Cir. 1998) .................................................................................. 21

*Craftwood Lumber Co. v. Interline Brands, Inc.,*
No. 11-cv04462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................ 19, 21

*Davenport v. Discover Financial Services, et al.,*
No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) ...................................................... 9

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ...................................................................................... 2

*Estrada v. iYogi, Inc.,*
No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ................ 13

*Freeman v. Berge,*
68 F. App'x 738 (7th Cir. 2003) ................................................................................ 15

*Garret, et al. v. Sharps Compliance, Inc.,*
No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) ......................................... 13

*Golan v. Veritas Entm't, LLC*,
  No. 4:14CV00069 ERW, 2017 WL 3923162 (E.D. Mo. Sept. 7, 2017) ...............13, 14

*Heekin v. Anthem, Inc.*,
  No. 05-cv-01908-TWP-TAB, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012).............21

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)..................................................................................12

*In re Capital One TCPA Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ....................................................................13, 16

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ..............................................................................12, 19

*In re Gen. Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir. 1979) ...................................................................................10

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................................15

*In re Sw. Airlines Voucher Litig.*,
  No. 11 C 8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)........................14, 15, 21

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) ..............................................................................19, 21

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  No. CG02–278, 2015 WL 4387780 (July 10, 2015)....................................................11

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ......................................................................2, 10, 14, 18

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015)................................................................9, 13, 16, 20

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
  834 F.2d 677 (7th Cir. 1987) ......................................................................................12

*Martin v. Reid*,
  818 F.3d 302 (7th Cir. 2016) ......................................................................................10

*Pearson v. NBTY, Inc.*,
  772 F.3d 778 (7th Cir. 2014) ...............................................................................10, 20

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .......................................................................10, 18, 20

*Rose v. Bank of Am. Corp.*,
    Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358 (N.D. Cal. Aug. 29, 2014).............13

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..................................................................14, 15

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) .....................................................................................16

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) .....................................................................................18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...........................................................................*passim*

*Uhl v. Thoroughbred Tech. & Telecomm., Inc.*,
    309 F.3d 978 (7th Cir. 2009) .......................................................................................2

*Wright v. Nationstar Mortg. LLC*,
    No. 14 C 1045, 2016 WL 4505169 (N.D. Ill. Aug. 26, 2016)....................................19

## OTHER AUTHORITIES

*Manual for Complex Litigation* (Fourth) (2004) § 21.312 .....................................................11

*Manual for Complex Litigation* (Fourth) § 21.61 (updated 2017)............................................3

William B. Rubenstein,
    *Newberg on Class Actions* § 13:45 (5th ed. 2016).......................................................3

## I. INTRODUCTION

Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee Beecroft ("Plaintiffs") and Counsel[1] achieved substantial relief for Settlement Class Members in the form of a settlement ("Settlement") that requires Defendant Ocwen Loan Servicing, LLC ("Ocwen") to pay $17,500,000 into a non-reversionary settlement fund. The Settlement also includes an injunction that requires Ocwen to alter its consent-gathering practices and to pay enhanced damages to people who receive automated calls because of gaps in such practices.

Reaching settlement terms was no easy feat. Counsel battled with Ocwen to obtain the evidence they needed to prove Ocwen systematically violated the TCPA. Ocwen litigated just about every possible issue, even when it was clear from ongoing accounts of Class Members that Ocwen continued to violate the TCPA. Plaintiffs moved to enjoin Ocwen's behavior, and after taking testimony surrounding Ocwen's consent practices, the Court agreed that Plaintiffs would be entitled to injunctive relief. This was the turning point in the case. After nearly three years of hard-fought litigation, Ocwen finally agreed to resolve the litigation.

Notice of the Settlement has been sent and the claims, exclusion, and objection deadlines have passed. In total, 267,422 claims have been timely submitted for a cash payment; close to 16% of the Settlement class. If the Settlement were to be approved as requested, and all of the submitted claims were accepted, each claimant would receive approximately $39. By contrast, out of a Settlement Class of persons called on 1,685,757 unique cellular telephone numbers, just 367 exclusion requests[2] were submitted, and only three people objected.[3]

---

[1] This motion has been filed on behalf of Burke Law Offices, LLC, Terrell Marshall Law Group PLLC, The Cabrera Firm, APC, and Heaney Law Firm, LLC.

**[2] These exclusion requests include 125 exclusions from the Hyde & Swigart law firm, which may have had a connection with letters that the Ankcorn Law Firm sent to class members with the highest-value claims. Declaration of Cameron Azari ("Azari Decl.") ¶ 15.**

The objectors argue generally that the deal could have been better, and that Counsel's fee request is too high. Counsel fully appreciate the important role that objectors can play in the class settlement approval process. However, as discussed below, these objections are not bases upon which the Court should deny approval, particularly considering the litigation risk and the outstanding results obtained.

For the reasons set forth in this memorandum and in the papers previously submitted in support of approval of the Settlement and the request for attorneys' fees, costs, and incentive awards, Plaintiffs respectfully request that the Court grant final approval to the settlement by: (1) approving the proposed Settlement Agreement as fair, adequate, and reasonable for the certified Settlement Class; (2) determining that adequate notice was provided to the Settlement Class; (3) approving payment to the claims administrator, capped at $1,600,000; (4) approving Class Counsel's requested attorneys' fees of $5,289,250; (5) approving an award of $25,000 each to Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee Beecroft for their service as Class Representatives; and (6) overruling the three objections.

## II. AUTHORITY AND ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). Under Rule 23, a court's inquiry is whether the settlement is "lawful, fair, reasonable, and adequate." *Uhl v. Thoroughbred Tech. & Telecomm., Inc.*, 309 F.3d 978,

---

[3] Plaintiffs also received documentation from Settlement Class Member Nicole Petty, styled as an "Exclusion/Objection," in which Ms. Petty said she would like to seek separate compensation, and from Settlement Class Member Petty confirmed in a conversation with Plaintiff attorney Daniel Marovitch that she wishes to be excluded from the settlement. Class Member Mable McLendon, who alleges that Ocwen locked her out of her property, among other wrongs. After a discussion with Class Counsel Alex Burke, Ms. McLendon requested exclusion from the settlement. *See* Dkt. No. 311, Exhs. A-C.

986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation* (Fourth) § 21.61 (updated 2017).

**A.     The Settlement is the result of informed, arm's-length negotiations.**

A proposed class settlement is presumptively fair when sufficient discovery has been provided and "the settlement is the product of arms-length negotiation, untainted by collusion." William B. Rubenstein, *Newberg on Class Actions* § 13:45 (5th ed. 2016). The Settlement here satisfies this test. As the Court recognized in its preliminary approval order, "the Settlement has been negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case." *See* Dkt. No. 266. The Settlement Class is represented by highly competent counsel who have years of experience litigating and settling complex class actions, including actions involving alleged violations of the TCPA. *See* Dkt. No. 252-2 ¶¶ 24–27, 252-3 ¶¶ 6-7, 252-5 ¶¶ 2-3, 252-6 ¶ 3.

To reach this Settlement, the parties engaged in three mediations,[4] the last of which was before the Honorable Morton Denlow (Ret.) of JAMS. Dkt. No. 252-2 ¶¶ 13, 17. The full-day mediation and subsequent additional negotiations culminated in a Settlement Agreement that provides substantial benefits to the Settlement Class, including robust injunctive relief that requires Ocwen to alter its consent-gathering practices and to pay enhanced damages to people who may receive automated calls in the future because of gaps in such practices. Dkt. No. 252-1 at § 4.2. Specifically:

---

[4] The first and third mediations were full days. Although the second mediation in West Palm Beach near Ocwen's headquarters was scheduled for a full-day, it abruptly ended at about noon when the parties came to what appeared to be an insurmountable impasse.

4.2.1.  Ocwen will re-set to "P" in REALServicing a borrower's consent to receiving automated calls whenever a new phone number is added to a borrower's account.

4.2.2.  Ocwen will conduct a search for all loans reflecting a NEWP and NVLS code entered in REALServicing on the same day between December 1, 2014 and the date of Preliminary Approval. Ocwen will reset the value in the consent field to "P" for all borrowers identified by that search.

4.2.3.  Ocwen will add an additional prompt to its agent scripts for inputting new phone numbers to track the means by which any particular phone number for a borrower was obtained:

     (a)    When an agent clicks on the "new phone number" button to add a new phone number to an account, the agent will be prompted to add the source of the new phone number.

     (b)    The phone number source will be selected from a dropdown menu prepopulated with potential sources of a new phone number.

     (c)    The agent will then be required to select the phone number's source before proceeding.

     (d)    If the phone number was not obtained directly from the owner or subscriber of the cell phone, the consent field for the borrower will then be set to "P," which will prevent any of the borrower's cell phone numbers from being called from Ocwen's Aspect system.

     (e)    Ocwen shall not use Aspect to call any cell phone associated with any borrower where there is a P or N in the consent field, except in instances in which Ocwen is calling borrowers for the Home Retention Manager appointment scheduled by the borrower.

4.2.4.  Ocwen agrees to use the following language in its scripts when requesting consent to use its automatic dialing system to call cell phones: "May we please have your consent to use our automatic dialing system to call your cell phone of xxx-xxx-xxxx?" After the borrower provides a response, a script will instruct Ocwen's representative to state: "If you change your mind at any time, please let us know. We will honor such a request."

4.2.5.  If, when Ocwen solicits a borrower's consent to be called with an automatic dialing system, that borrower does not give separate consent

for each of his or her cell phone numbers, the borrower's consent field
will be set to "N," which will prevent any of the borrower's cell phone
numbers from being called from Ocwen's Aspect system.

4.2.6.  In any individual case commenced between the date of the Preliminary
Approval Order and a date that is two years from the date of Final
Approval, if it is found liable for a TCPA violation, Ocwen agrees to pay
not less than the amounts set forth below for each automated call through
its Aspect system to a cell phone, where the consent field in Ocwen's
REALServicing system should have been "N" or "P" as of the date of
the Preliminary Approval Order:

(a)     For the first 10 calls placed to a cell phone as described in
this Section 4.2.6, Ocwen shall pay $1,000 for each such call.

(b)     For 11-50 calls placed to a cell phone as described in this Section
4.2.6, Ocwen shall pay $1,250 for each such call.

(c)     For over 50 calls placed to a cell phone as described in this
Section 4.2.6, Ocwen shall pay $1,500 for each such call.

The terms of Section 4.2.6 shall not apply in any case in which a plaintiff
brings claims on behalf of an alleged class of persons similarly situated.

*Id*.

The Settlement also requires Ocwen to make a non-reversionary payment of $17,500,000

into a Settlement Fund that Plaintiffs propose be used to pay (1) over $10 million toward

Settlement Class Member claims; (2) settlement administration expenses, which have been

capped at $1,600,000; (3) court-approved incentive awards to Plaintiffs Keith Snyder, Susan

Mansanarez, and Tracee Beecroft in the amount of $25,000 each; (4) court-approved attorneys'

fees of $5,289,250 (one-third of the net Settlement Fund after deducting administration expenses

and service awards); and (5) court-approved out-of-pocket expenses totaling $66,780.[5]

The mediation with Judge Denlow followed a thorough investigation by the parties and

three years of contentious litigation. Plaintiffs took extensive discovery. Dkt. No. 294 ¶ 18.

---

[5] Ankcorn Law Firm PLLC seeks an additional $35,600 in costs. *See* Dkt. 296 at 1. However, in
their motion for preliminary approval, Counsel agreed to seek no more than $100,000 in total
costs. Dkt. No. 252 at 9.

Together, they served Ocwen with seven sets of written discovery. *Id*. In response, Ocwen produced nearly 600,000 pages of documents. *Id*. Plaintiffs also deposed four of Ocwen's representatives: Diksha Dutt, Marc Trees, Crystal Kearse, and Sherri Goodman. *Id*. Through their review of Ocwen's voluminous production, and the depositions of Ocwen's representatives, Plaintiffs learned that, prior to 2014, Ocwen had no policies, practices, or procedures for obtaining consent before using its Aspect autodialer to call cell phones. *Id*. Ocwen called phone numbers logged as "home," "work," or "other" without first scrubbing to determine whether they were cell phones, and without regard to consent. *Id*. In addition, Ocwen had a practice of not honoring borrowers' verbal requests to stop calling. *Id*. Plaintiffs hired expert Jeff Hansen to review the Aspect calling records. *Id*. His analysis shows that Ocwen made over one hundred million Aspect calls to cell phones belonging to consumers, for whom Plaintiffs allege Ocwen had no record of consent. *Id*.

Obtaining discovery from Ocwen was no easy feat. Dkt. No. 294 ¶ 19. Ocwen resisted producing important discovery, including insurance policies, information about its proprietary systems and databases, data evidencing the calls it made, discovery relating to when and how Ocwen tracked consent, evidence as to whether Ocwen ever obtained consent, and discovery on Ocwen's handling of consent revocation requests. *Id*. Ocwen's resistance to producing these plainly relevant materials forced Plaintiffs to bring multiple motions to compel production and related discovery motions. *See* Dkt. Nos. 49, 58, 74, 103, and 179. Because of the adversarial nature of the litigation, the parties appeared before the Court telephonically or in person on a monthly, and sometimes weekly basis, and ultimately appeared for an evidentiary hearing to address whether the Court would impose a preliminary injunction. *See* Dkt. Nos. 61, 67, 72, 78, 84, 102, 106, 115, 119, 126, 175, 182, 193, 204, 208.

Plaintiffs, along with their expert Jeff Hansen, also responded to written discovery propounded by Ocwen. Dkt. No. 294 ¶ 20. Moreover, Ocwen deposed each Plaintiff, along with several of Plaintiffs' family members. *Id*. Finally, Plaintiffs served subpoenas on the Better Business Bureau, where they obtained additional consumer complaints against Ocwen and its insurance broker, in an effort to obtain information regarding insurance coverage (if any). *Id*.

In addition to discovery-related motions, the parties engaged in substantive motion practice. Dkt. No. 294 ¶ 21. On October 4, 2016, Plaintiffs filed a motion seeking class certification under Rule 23(b)(2) for purposes of obtaining preliminary injunctive relief. Dkt. No. 97. Although Ocwen opposed this motion (Dkt. No. 128), on June 28, 2017, the Court held that Plaintiffs had established the basis for certification of a class under Rule 23(b)(2) and were entitled to preliminary injunctive relief. Dkt. No. 223. And on May 26, 2017, Plaintiffs moved to certify damages classes under Rule 23(b)(3). Dkt. No. 216. Ocwen opposed this motion on July 24, 2017. Dkt. No. 141.

By the time the Parties mediated with Judge Denlow—their third mediation, nearly three years into the litigation—they understood the risks involved in the case. Dkt. No. 294 ¶¶ 22, 23.

**B.  Settlement Class Members received the best notice practicable.**

This Court already preliminarily determined that the notice program provides due and sufficient notice to the Settlement Class, fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and constitutes the best notice practicable under the circumstances. Dkt. No. 266 at 3. Settlement Administrator, Epiq, executed the notice program. *See generally* Declaration of Cameron Azari ("Azari Decl.").

The notice plan included notice by United States Mail, email and Internet publication. Between November 15 and November 20, 2017, Epiq sent Mail Notice to 1,457,494 persons for

whom Ocwen had mailing addresses. Azari Decl. ¶ 6. The Email and Mail Notices summarized

the settlement, informed Settlement Class members of key deadlines, including the deadline to

submit claims, exclusion requests, or objections, and referred Settlement Class Members to the

Settlement Website. *Id.*, Exs. A, B. Epiq updated addresses using the United States Postal

Service National Change of Address database before mailing. *Id.* ¶ 5. Epiq also re-sent Mail

Notices that were returned to updated addresses Epiq found, or Settlement Class Members

provided. *Id.* ¶ 8. Epiq estimates that 95.1% of the Settlement Class List received either Mail or

Email Notice. *Id.* ¶ 12.

  In addition to the mailed notice, the parties sent emails to all available email addresses. In

other words, class members who had both mailing addresses and email addresses on file received

*both* types. Between November 15 and November 20, 2017, Epiq distributed Email Notice to

1,014,821 email addresses associated with Settlement Class Members. Azari Decl. ¶ 7. Shortly

thereafter, Counsel received complaints from potential claimants who experienced problems

submitting claims through the Settlement Website. Dkt. No. 277 ¶ 3. Epiq investigated the issue

and determined that a coding error on the claim submission page prevented certain claimants

from submitting claims. *Id.* Epiq fixed the coding error on November 29, 2017. *Id.* ¶ 4. To ensure

that all Settlement Class Members who received Email Notice had the opportunity to submit

successful claims via the Settlement Website, the Court authorized Epiq to send an email blast

advising Settlement Class Members of the issue, and encouraging them to submit claims. Dkt.

No. 279. The Court also extended the deadline to file a claim, object, or opt out to March 5,

2018. *Id.*; *see also* Dkt. No. 290.

  Epiq supplemented this successful direct notice program with a targeted internet banner

ad campaign. Azari Decl. ¶ 25. Epiq also established a toll-free number where Settlement Class

Members were able to learn more about the Settlement, leave messages regarding Settlement-related inquires, and speak with live operators. *Id*. ¶¶ 18-20. In addition, Epiq established a Settlement Website where Settlement Class Members were able to file a claim, receive answers to frequently asked questions, and download documents such as Class Notice, the Settlement Agreement, and Preliminary Approval Order. *Id*. ¶ 21. As of March 9, 2018, the toll-free number had received 21,607 calls, and the website had received 286,875 visitors. *Id*. ¶¶ 20, 24.

As of March 9, 2018, Epiq had received 267,422 claim forms that were postmarked or electronically submitted by the March 5 deadline for submitting claims. Azari Decl. ¶ 17. In contrast, Epiq, the parties, and the Court received just three objections. *Id*. ¶ 16, Exh. D. Only 367 Settlement Class Members (.02% of the numbers on the Settlement Class List) requested to opt out. *Id*. ¶ 15.

The notice program was not just successful, it was extraordinary; approximately 16% of the Settlement Class List submitted potentially valid claims (Azari Decl. ¶ 17), a rate that is far and above claim rates in other TCPA settlements. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 818854, at *2 (N.D. Ill. Mar. 2, 2017) (approving settlement with 6.1% claims rate); *Davenport v. Discover Financial Services, et al.*, No. 1:15-CV-06052, Dkt. No. 110 (N.D. Ill. 2017) (approving settlement with 3.4% claims rate); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (approving settlement with 2.5% claims rate). Epiq has agreed to cap the cost of notice and administration at $1,600,000 regardless of the final claim rate. Azari Decl. ¶ 26. In sum, the notice program implemented by Epiq has provided due and adequate notice of these proceedings and satisfies the requirements of due process. *Id*. ¶ 27.

**C.      The Settlement satisfies the criteria for settlement approval.**

In evaluating a settlement, a district court must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby*, 75 F.3d at 1999); *see also Martin v. Reid*, 818 F.3d 302, 306-307 (7th Cir. 2016) (same). "The 'most important factor relevant to the fairness of a class action settlement' is the first one listed: 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel*, 463 F.3d at 653 (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)).

The court also "must assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). The court evaluating the settlement is "a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014).

1.      <u>The strength of Plaintiffs' case compared to the amount of the Settlement.</u>

The Settlement reached in this case requires Ocwen to alter its consent-gathering practices and to pay enhanced damages to people who may receive automated calls in the future because of gaps in such practices, and to pay $17,500,000 into a Settlement Fund, out of which approximately more than $10 million will be distributed to the Settlement Class Members who

have filed timely valid claims. If all of the claims are validated and if the Court approves attorney's fees as requested, Settlement Class Members who filed a timely claim will receive approximately $39.[6] The Settlement Fund is non-reversionary. No amount will return to Ocwen.

The monetary award to each valid claimant is substantial in light of the risks Plaintiffs faced going forward. First, Plaintiffs risked losing on the merits. Dkt. No. 294 ¶ 23. Ocwen maintains that Class members are not entitled to recover because they consented to be contacted on their cell phones by providing their numbers to Ocwen verbally or in writing. *Id.* At the inception of this case in October 2014, the FCC had not directly addressed whether consent could be revoked at all. *Buchholz v. Valarity, LLC*, No. 4:13CV362 TIA, 2014 WL 5849434, at *6 (E.D. Mo. Nov. 12, 2014) (recognizing split of authority and observing that "some courts have held that the TCPA does not permit revocation, whether written or oral.") *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, No. CG02–278, 2015 WL 4387780 (July 10, 2015) was decided during the pendency of this case. Consent is an affirmative defense for which Ocwen carries the burden of proof, and Plaintiffs dispute that Ocwen could meet this burden at trial. *Id.* However, if the trier of fact disagreed with Plaintiffs on this legal issue, Plaintiffs and the Class would receive nothing. *Id.*

Second, Ocwen's consent defense carried the risk that Plaintiffs' motion to certify under Rule 23(b)(3) would not succeed. Dkt. No. 294 ¶ 24. Ocwen maintains that many class members

---

[6] $17,500,000 settlement fund - $5,289,250 attorneys' fees - $75,000 class representative awards - $1,600,000 costs of administration – $100,000 costs = $10,435,750. $10,435,750 divided by 267,422 claims = $39. Due to the extraordinarily high claim rate, this number is lower than the $60 estimate Plaintiffs provided in their motion for preliminary approval. *See* Dkt. No. 252 at 7. The notice explained the mechanism for calculation of claim amount, and explained that class members could receive up to $1,500 per call if they sued individually. *See Manual for Complex Litigation* (Fourth) (2004) § 21.312 (Notice should "[p]rovide information that will enable class members to calculate or at least estimate their individual recoveries."). The large claim rate here is testament to the excellent notice plan, and demonstrates the Class' overwhelming, express approval of the Settlement.

consented to receive calls to their cell phones, but that determining who consented is an individualized issue that requires a loan-by-loan analysis. *Id.* Although Plaintiffs believe the Court would reject Ocwen's defense as hypothetical, and that they would have successfully certified one or more Rule 23(b)(3) classes, there is a risk that the Court would decline to grant certification, leaving only the named Plaintiffs to pursue their individual claims. *Id.*

Finally, if Plaintiffs obtained Rule 23(b)(3) class certification and prevailed on the merits, any recovery would undoubtedly be delayed for years by an appeal. Many of the calls made by Ocwen were initiated manually. Dkt. No. 294 ¶ 25. In *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.), the D.C. Circuit is considering a challenge to the proscription on calls initiated from a telephone dialing system when such calls are initiated manually. *Id.* The outcome of this appeal could alter the legal landscape to the Settlement Class Members' detriment. *Id.* Moreover, the large class size means any judgment would be in the billions; Ocwen would have a strong incentive to litigate any and all appeals as far as possible, over many years. *Id.*

The Settlement allows Settlement Class Members to avoid these risks and obstacles to recovery and receive substantial benefits, and in a timely fashion. While the estimated cash of $39 does not constitute the full measure of statutory damages potentially available to the Settlement Class, settlements very rarely do. Settlement is a compromise, and courts need not reject a settlement "solely because it does not provide a complete victory to plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010); *see also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 682-83 (7th Cir. 1987) (finding a settlement that constituted only a small fraction of the potential $750 million to $1.5 billion the plaintiffs could have recovered at trial "seems generous—and certainly

adequate, as the district court found" when plaintiffs faced significant challenges in proving their claims).

Indeed, the Settlement compares favorably to other TCPA settlements in the Seventh Circuit and elsewhere. *See In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ("*Capital One*") (granting final approval where each class member would be awarded $39.66); *Kolinek*, 311 F.R.D at 493–94 (granting final approval where class members each stood to receive $30); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members would receive an estimated $40); *Rose v. Bank of Am. Corp.*, Nos. 11 C 2390 & 12 C 4009, 2014 WL 4273358, at *10–11 (N.D. Cal. Aug. 29, 2014) (finally approving settlement where class members would receive between $20 and $40); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) ($40 per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (between $27.42 and $28.51 per claimant).

The per-class member relief offered under this Settlement reflects even more favorably when one considers *Golan v. Veritas Entm't*, LLC, No. 4:14CV00069 ERW, 2017 WL 3923162, at *4 (E.D. Mo. Sept. 7, 2017), where a district court recently reduced a TCPA jury award of $500 per call to $10 per call.

Given the significant risks Plaintiffs face in proving their claims on a class-wide basis, a $39 cash award, which is comparable to other TCPA settlements, along with injunctive relief that requires Ocwen to significantly alter its calling practices, is an excellent result for the Settlement Class.

2.    <u>Continued litigation would be complex, lengthy, and expensive.</u>

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). At the time of settlement, the parties had endured months of grueling discovery battles and had gone to decision on Plaintiffs' injunction motion. Plaintiffs' motion for certification of Rule 23(b)(3) classes was fully briefed. And although the Court already held that Plaintiffs established the *basis* for certification of a limited class under Rule 23(b)(2) and were entitled to preliminary injunctive relief, the Court deferred the entry of the actual injunction. Depending on the outcome of these motions, Plaintiffs could have faced motions for decertification. In addition, Ocwen very likely would have filed one or more motions for summary judgment. Assuming Plaintiffs successfully certified one or more Rule 23(b)(3) classes and defeated any motions for summary judgment, there is a substantial risk of losing inherent in any jury trial. And while Plaintiffs believe that such a trial should have been simple, they rest assured that Ocwen would have found a way to make it difficult. Moreover, any judgment obtained in favor of Plaintiffs and the proposed class could be further delayed by the appeal process or reduced through post-trial rulings. *Golan*, 2017 WL 3923162 at *4.

This factor favors settlement approval.

3.    <u>The reaction of the Settlement Class and Counsel's support favor approval.</u>

The amount of opposition to a settlement among affected parties is another factor district courts consider in deciding whether to approve a class action settlement. *Synfuel*, 463 F.3d at 653; *see also Isby*, 75 F.3d at 1199. Courts often infer that a settlement is fair, adequate, and reasonable when few class members object to it. *See, e.g., Isby*, 75 F.3d at 1200 (affirming final approval of settlement where 13% of the class submitted written objections); *In re Sw. Airlines*

*Voucher Litig.*, No. 11 C 8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement"); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011) (approving settlement where 342 class members excluded themselves and 15 class members objected); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir. 2001).

Here, only three of 1.6 million class members have objected. The nearly <u>sixteen percent</u> claim rate indicates that class members understood the deal and endorsed the settlement.

  a.  *The Court should overrule the objections*.

Just three persons objected to the Settlement. To hold any sway on final approval of the Settlement, the objections must "cast doubt upon the settlement's fairness, reasonableness, or adequacy." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *11 (N.D. Ill. Feb. 28, 2012) (finding that objections that failed to do so should be overruled by the court); s*ee also Freeman v. Berge*, 68 F. App'x 738, 743 (7th Cir. 2003) (affirming final approval of settlement and recognizing that objections must have merit to be considered). The objectors have not met that burden here and each of the objections should be overruled.

Two objectors, Stuart and Seltzer, contend that the amount of the Settlement Fund should have been different and that the anticipated individual recoveries to claiming Settlement Class Members are too small. *See* Dkt. No. 309 (Objector Stuart requesting that the Court "provide [her] a more reflective restitution" where she received calls "well into the 100's and perhaps 1000's); *see also* Dkt. No. 310 (Objector Seltzer incorrectly concluding his share of the

Settlement would be $3.46 after attorneys' fees if all class members submitted valid claims). However, as this Court found in a TCPA settlement with comparable monetary relief, such an argument is not well-founded. *Kolinek*, 311 F.R.D at 493. "First, the recovery for plaintiffs is comparable to the recovery plaintiffs have collected in similar TCPA cases." *Id.* "Second, the Court's duty is not simply to measure the settlement value against the possible value of a plaintiff's total victory following trial." *Id.* at 494. The Court must also consider as part of the "range of possible outcomes" total non-recovery. *Id.* (citing *Synfuel Techs.,* 463 F.3d at 653). Here, non-recovery was a real risk in light of Ocwen's consent defense.

Two objectors challenge Counsel's request for attorneys' fees. *See* Dkt. Nos. 308, 310. Without any legal basis, Mr. Seltzer argues that Counsel should receive only $3,500,000 in attorneys' fees. Dkt. No. 310. Mr. Squicciarini argues that any attorneys' fee award should be limited to $4.875 million, citing language in Plaintiff's fee petition (Dkt. No. 293 at 15) that referenced Judge Holderman's analysis of the appropriate market rate for the award of attorneys' fees in TCPA class action. But Mr. Squicciarini ignored the second part of Judge Holderman's analysis, which analyzed the risk of non-payment that counsel face when they decide to take on a class action. *Capital One*, 80 F. Supp. 3d 781, at 805.

These objections should not give the Court pause in approving the Settlement. Risk premiums are warranted where "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). Objectors do not seem to fully realize that this case was high-risk and hard-fought. Counsel shouldered significant risk due to Ocwen's consent defense, and the risk that the D.C. Circuit in *ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.) would conclude that calls made manually from a telephone dialing system do not violate the TCPA, which would

have a significant deleterious effect on the claims of the Settlement Class. Counsel incurred more than $100,000 in costs without any assurance that this amount would be reimbursed. Whether consumers were permitted to revoke consent they had already given was not decided until almost a year after the case was filed, in July 2015. For these risks, and because they did an excellent job handling a difficult and exhausting litigation, Counsel seek an award of 30% of the net Settlement Fund plus a six percentage point risk adjustment on the first *Capital One* band ($3,600,000), and 25% of the net Settlement Fund plus a four percentage point risk adjustment on the second *Capital One* band ($1,689,250), modest upward adjustments to the *Capital One* structure result in an award of one-third of the net Settlement Fund. Dkt. No. 293 at 18.

Finally, Brenda Stuart's objection should also be overruled because she failed to state she intends to appear at the Final Approval Hearing, as required by the Court's Preliminary Approval Order. *See* Dkt. No. 266 at ¶ 13.

> b. *The extraordinary claim rate and Counsel's support of the Settlement favor approval.*

Settlement Class Members showed their approval of the Settlement through their 267,422 claims. These claims equate to approximately 16% of the Settlement Class List, an extraordinary claim rate. Azari Decl. ¶ 17. Moreover, only 367 persons, or .02% of the Settlement Class List, requested to opt out. *Id.* ¶ 15. The fact that more than 99% of class members have neither objected nor opted out is strong evidence in favor of the Settlement. Finally, the undersigned Counsel endorse this settlement and believe it is a great result for the Settlement Class. *See* Dkt. No. 252-2 ¶ 23; Dkt. No. 252-3 ¶ 11; Dkt. No. 252-5 ¶ 6; Dkt. No. 252-6 ¶ 8. Counsel's support and the positive reaction of Settlement Class Members are evidence that the Settlement is fair, reasonable, and adequate.

4. <u>The extent of discovery completed and the stage of the proceedings.</u>

Courts consider the extent of discovery completed and the stage of the proceedings in determining whether a class action settlement is fair, adequate and reasonable. *See Synfuel*, 463 F.3d at 653; *see also Isby*, 75 F.3d at 1200 (noting "the discovery and investigation conducted by class counsel prior to entering into settlement negotiations was 'extensive and thorough'").

Here, Class Counsel have thoroughly analyzed the factual and legal issues involved. Settlement was reached after three years of adversarial litigation. Plaintiffs propounded multiple sets of written discovery and obtained hundreds of thousands of pages of documents from Ocwen regarding, among other topics, its policies and procedures for obtaining and tracking consent. Dkt. No. 294 ¶ 18. Plaintiffs also took four depositions of Ocwen representatives regarding these policies and procedures, Ocwen's use of the Aspect autodialer, and the design and operation of Ocwen's borrower database, REALServicing. Dkt. No. 252-2 ¶ 15. As a result of their extensive discovery efforts, by the time the parties reached a settlement, they understood the strengths and weaknesses of their claims and defenses and the extent of class wide damages. Counsel's thorough legal and factual analyses informed the Settlement.

That this case went to an evidentiary hearing, or that an injunction motion was granted – two extraordinary and rare events – also favors approval. This factor weighs in favor of approval.

5. <u>The Settlement is reasonable in light of the requested attorneys' fees.</u>

When determining whether a proposed settlement is reasonable, the Seventh Circuit has instructed district courts to "assess the value of the settlement to the class and the reasonableness of the agreed-upon attorneys' fees for class counsel, bearing in mind that the higher the fees the less compensation will be received by the class members.", 768 F.3d at 629.

Here, Counsel request one-third of the net Settlement Fund after costs of settlement administration have been deducted, which reasonably reflects the market rate for fees in similar cases, especially in light of the substantial risks Counsel shouldered in bringing this case. As Counsel describe in their fee petition (Dkt. No. 293), federal courts have long recognized that when counsel's efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, counsel have a right to be compensated from that fund for their successful efforts in creating it. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("lawyer who recovers a common fund … is entitled to a reasonable attorneys' fee from the fund as a whole"); *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) ("the attorneys for the class petition the court for compensation from the settlement or common fund created for the class's benefit"). The goal is to award counsel "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases).

Courts in this district have routinely concluded that the percentage-of-the-fund approach is superior to the lodestar approach for determining the market price for legal services in TCPA class action settlements. *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2017 WL 1369741, at *2, 9 (N.D. Ill. Apr. 10, 2017) (using percentage-of-the-fund method in TCPA case and declining to engage in lodestar analysis); *Wright v. Nationstar Mortg. LLC*, No. 14 C 1045, 2016 WL 4505169, *17 (N.D. Ill. Aug. 26, 2016) (same); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv04462, 2015 WL 1399367, at *5 (N.D. Ill. Mar. 23, 2015) (same). The percentage-of-the-fund approach is particularly appropriate in consumer class actions because the custom is for counsel and plaintiff to "negotiate[] a fee arrangement based on a percentage of the recovery." *Capital One*, 80 F. Supp. 3d at 795 (applying percentage-of-the-fund method in

TCPA class action). "This is so because fee arrangements based on the lodestar method require plaintiffs to monitor counsel and ensure that counsel are working efficiently on an hourly basis," which is something that consumer class members "likely would not be interested in doing." *Kolinek,* 311 F.R.D. at 493–94 (using percentage-of-the-fund method in TCPA class action).

"The object in awarding a reasonable attorney's fee … is to give the lawyer what he would have gotten in the way of a fee in arm's length negotiation, had one been feasible." *In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 572 (7th Cir. 1992). Generally speaking, the "ratio that is relevant … is the ratio of (1) the fee to (2) the fee plus what the class members received." *Pearson v. NBTY, Inc*., 772 F.3d 778, 781 (7th Cir. 2014) (quoting *Redman v. RadioShack Corp*., 768 F.3d 622, 630 (7th Cir. 2014)).

Although there is no hard-and-fast rule, in consumer class actions in the Seventh Circuit, attorneys' fees awarded to class counsel "should not exceed a third or at most a half of the total." *Redman*, 768 F.3d at 631. Following *Pearson* and *Redman* "to a T," Class Counsel have requested one-third of the *net* Settlement Fund, which is $5,289,250. If Class Counsel's requested fees are approved, the Settlement Class Members would retain benefits totaling $10,535,750 ($17,500,000 Settlement Fund - $1,600,000 Notice and Administration Costs - $75,000 Incentive Awards - $5,289,250 Requested Attorneys' Fees). Thus, the "fee plus what the class members would receive" totals $15,825,000 ($5,289,250 + $10,535,750). Based on the ratio set forth in *Pearson* and *Redman*—fees to fees plus the value to class members—Counsel request one-third of the total settlement value to the class, which is within the acceptable range of fee awards in the Seventh Circuit. Thus, the Settlement is reasonable in light of this factor.

**D.** **The incentive awards to the Class Representatives are fair and reasonable.**

Incentive awards compensating named plaintiffs for work done on behalf of the class are also routinely granted. Such awards encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *see also Synthroid I*, 264 F.3d at 722 ("Incentive awards are justified when necessary to induce individuals to become named representatives.").

The requested incentive awards of $25,000 each for named Plaintiffs Keith Snyder, Susan Mansanarez, and Tracee Beecroft are reasonable. Plaintiffs worked with Counsel to investigate the case, responded to written discovery requests, were kept abreast of the proceedings, reviewed and approved the proposed settlement, and sat for depositions. Dkt. No. 294 ¶ 26. In addition, Plaintiffs' family members were required to sit for depositions. *Id*. Moreover, the amount requested is consistent with awards approved by courts in this District and elsewhere. *See, e.g., Cook*, 142 F.3d at 1016 (affirming $25,000 service award to plaintiff); *Craftwood Lumber Co.*, 2015 WL 1399367 (awarding $25,000 service award to plaintiff in TCPA case); *In re Sw. Airlines Voucher Litig.*, No. 110CV-8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013) (awarding $15,000 service awards to both named plaintiffs); *Heekin v. Anthem, Inc.*, No. 05-cv-01908-TWP-TAB, 2012 WL 5878032 at *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 service award to lead class plaintiff over objection).

**E.** **The Settlement Class should be finally certified.**

In the Preliminary Approval Order, the Court conditionally granted class certification for settlement purposes only. Dkt. No. 266 at ¶¶ 5-6. For all the reasons set forth in Plaintiffs'

preliminary approval briefing and the Preliminary Approval Order, the Court should finally certify the Settlement Class.

### III. CONCLUSION

The Settlement is fair, adequate, and reasonable in all respects. Therefore, Plaintiffs respectfully requests that the Court overrule the objections and grant final approval to the Settlement.

RESPECTFULLY SUBMITTED AND DATED this 9th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
    Beth E. Terrell, *Admitted Pro Hac Vice*
    Email: bterrell@terrellmarshall.com
    Adrienne D. McEntee, *Admitted Pro Hac Vice*
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

    Alexander H. Burke, #6281095
    Email: aburke@burkelawllc.com
    Daniel J. Marovitch, #6303897
    Email: dmarovitch@burkelawllc.com
    BURKE LAW OFFICES, LLC
    155 North Michigan Avenue, Suite 9020
    Chicago, Illinois 60601
    Telephone: (312) 729-5288
    Facsimile: (312) 729-5289

    Guillermo Cabrera
    Email: gil@cabrerafirm.com
    Jared Quient, *Admitted Pro Hac Vice*
    Email: jared@cabrerafirm.com
    THE CABRERA FIRM, APC
    600 West Broadway, Suite 700
    San Diego, California 92101
    Telephone: (619) 500-4880
    Facsimile: (619) 785-3380

Mark L. Heaney
Email:  mark@heaneylaw.com
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, Minnesota 55305
Telephone: (952) 933-9655

*Attorneys for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on March 9, 2018, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Chethan G. Shetty
Email: cshetty@lockelord.com
Simon A. Fleischmann
Email: sfleischmann@lockelord.com
Thomas J. Cunningham
Email: tcunningham@lockelord.com
David F. Standa
Email: dstanda@lockelord.com
LOCKE LORD LLP
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-0700
Facsimile: (312) 443-0336

Brian V. Otero, *Admitted Pro Hac Vice*
Email: botero@hunton.com
Stephen R. Blacklocks, *Admitted Pro Hac Vice*
Email: sblacklocks@hunton.com
Ryan A. Becker, *Admitted Pro Hac Vice*
Email: rbecker@hunton.com
HUNTON & WILLIAMS LLP
200 Park Avenue, Suite 52
New York, New York 10166
Telephone: (212) 309-1000
Facsimile: (212) 309-1100

*Attorneys for Defendant*

Frank A. Hirsch, Jr., *Admitted Pro Hac Vice*
Email: frank.hirsch@alston.com
Kelsey L. Kingsbery
Email: Kelsey.kingsbery@alston.com
ALSTON & BIRD LLP
4721 Emperor Boulevard, Suite 400
Durham, North Carolina 27703
Telephone: (919) 862-2200

Kenneth M. Kliebard
Email: Kenneth.kliebard@morganlewis.com
William J. Kraus
Email: William.kraus@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
77 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 324-1000

*Attorneys for Movants Wilmington Trust, N.A., Deutsche Bank National Trust Company and U.S. Bank, N.A.*

E. Lynette Stone
Email: els@thestonelawoffice.com
THE STONE LAW OFFICE
2101 Cedar Springs Road, #1050
Dallas, Texas 75201
Telephone: (972) 383-9499

*Attorney for Intervenor-Plaintiff Zachariah C. Manning*

Mark Ankcorn, #1159690
Email: mark@ankcornlaw.com
ANKCORN LAW FIRM PLLC
200 West Madison Street, Suite 2143
Chicago, Illinois 60606
Telephone: (321) 422-2333
Facsimile: (619) 684-3541

Ann Marie Hansen
Email: annmarie@ankcornlaw.com
80 Halston Parkway
East Amherst, New York 14051
Telephone: (702) 755-5678

DATED this 9th day of March, 2018.

TERRELL MARSHALL LAW GROUP PLLC


By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
  Beth E. Terrell, *Admitted Pro Hac Vice*
  Email:  bterrell@terrellmarshall.com
  936 North 34th Street, Suite 300
  Seattle, Washington 98103-8869
  Telephone: (206) 816-6603
  Facsimile: (206) 319-5450

  *Attorneys for Plaintiffs*